Thank you, Greg. Our first case this morning is Christopher West v. Warden, number 19-3421. Mr. Casamento? Good morning, Your Honor. Excuse me, it's Mr. Radishevitz. Oh, okay. The minutes say Casamento. Are you a partner of Mr. Casamento? I am, and excuse me, I entered my appearance and my acknowledgement was entered at least a day or two ago. Judge, this is Greg again. I apologize. We should have sent updated minutes with Mr. Radishevitz's name on those. Okay. My apologies, Mr. Radishevitz. You may begin. Thank you. Good morning, Your Honors, and thank you for hearing this. Are you reserving rebuttal time? I was just about to say that, yes. I'd like three minutes, if possible, of rebuttal time. That's fine. Thank you. If it pleases the Court, we represent Christopher West in this appeal, and the appeal centers around a situation in which a person in Christopher West's position was under what they call psychological close observation, or PCO. When did that begin exactly? It began, it's kind of fuzzy. It began in June, we believe June of 2014. The documents we supplied indicate that he was housed in those cells during June. It lasted until November 10, 2014. I'm looking at page six, and I just want to make sure that we're on the same page. This is the Department of Corrections form, page six of the D-Observation, June 9, 2014. Is that the date you're referring to? That is the date that I believe it was, but there are other dates in and around that time. I would go with June 9, because that's what that document indicates. Okay. All right. Then I understand Judge Sleet's view was that your client said he filed, or he gave to Officer, looks like, Feger, John Feger? Fleger. Was that the officer? Fleger? Correct. So he gave to Officer Fleger the filing on June 18, correct? Yes. Okay. All right. Go ahead. I'm sorry to interrupt. I just wanted to make sure we got those dates because there was some confusion on my part. Yes. So what transpired is that Judge Sleet's original denial of this habeas corpus motion centered around the fact that Mr. West had not filed a timely habeas, and he did not find that there was any equitable tolling of the one-year statute. Of course, Judge Sleet's ruling is not before us. That was never appealed. What's before us is the 60B determination by Judge Norica. Correct. And what transpired in the interim from the time that Judge Sleet's opinion was, an order was entered until we filed the 60B, in another matter that our firm actually handled, we did not handle the original habeas, but in another matter that we handled for Mr. West, in discovery and through testimony and depositions, it was discovered that there was supporting evidence of the PCO, psychological closed observation, that Mr. West had indicated had restricted him from following through in a timely fashion to file his habeas. In this case, he was housed 24-7, 24 hours a day, except to take a shower in isolation in a cell for upwards of five straight months. And during that time period, according to Katrina Burley, who was an officer at the Vaughan prison in Delaware, and she was the head of the medical unit down there where Mr. West was housed, he was not allowed any pens, pencils, any writing material whatsoever. He was not allowed to court. He was only allowed out of the cell to have a shower. Otherwise, he was in a 10 by 10 concrete cell for upwards of five months. Matter of fact, her testimony indicated that she had never seen in her 17 years, had never seen anyone restricted for as long as Mr. West had been in. Is that a problem? Yes, that was one of the original reasons why he was placed on psychological close observation, because he had a tendency to swallow things, whether it was pens, whether it was what they call a fork or spork, which is a stone and fork plastic. He had done that several times. He had psychological problems and he was being treated for it. And that's the reason he was housed there originally. Do we know that his conditions in June, when he managed to file, were different from the conditions during the August 29th to November 3rd time period? That was not discovered. We couldn't really discover that because there were obstacles in a way, I'll put it, from us gaining access to that. Although the other testimony by the person said the only way he really could file would be by going through mental health, which seems like a different situation from what happened in June. I agree. And I think there's a distinction here to be made. In the June, Mr. West gave an affidavit, obviously. And in the June explanation, where he said he was given a special condition involving three officers, he was shackled, he was muzzled. He was able to prepare for filing a habeas, but that filing never got filed. He was relying, obviously, upon the prison, but he could not follow up on that because he was in isolation 24 hours a day. He didn't have time. And he didn't know it until November 10th, he says. Correct. But Judge Noriega seems to not have, she seems to have misapprehended that. She seems to have taken his statement that it was intercepted as something that he had current knowledge of in that time frame. I agree with that. And in my brief, I explained that. The filing that he filed, his habeas filing, which in his filing, he indicates that his June filing was confiscated. But he didn't know that until he got out of PCO. And he actually explains that in his habeas filing. He says that specifically. And I think the disconnect was that Judge Noriega thought he knew it prior to that and should have taken steps to perfect his filing in a timely fashion. And our argument is he would not even know that it wasn't filed because he obviously couldn't receive mail. He couldn't do anything but take a shower when he left the cell. And this carried on for that whole time period, from August 28th to November 3rd, which was the 63 days. Do we decide this? Do you want us to decide this to say that there are extraordinary circumstances? Or do you want us to say that her equitable tolling argument is wrong, which then goes back into Judge Sleet's determination? I don't know if we can even do that. So what is your desire regarding the outcome of this case, or the analysis, if you will? Well, I think they're kind of in combination to a certain degree. Because Judge Noriega uses Judge Sleet's somewhat analysis of Mr. West's knowledge or knowledge that he should have had during those 63 days that his filing didn't occur. But the reality is, if you look at the dynamics of his isolated and isolation incarceration, in a setting where he has no access to anything, he gets served food on a tray through a metal door with a two-inch opening. This clearly should qualify as just an extraordinary circumstance, given Mr. West's setting and situation in this regard. What you just said is inconsistent with Judge Sleet's finding that he prepared something on June 14th, right? I mean, part of the problem here, it seems, is that West's own averment seems inconsistent with the facts as you describe them. The facts that you describe them, which makes sense to me, is that when he's under close observation in this ward, that he doesn't have access to writing implements. But West averred that he prepared something and gave it to John Fleeger on June 18, 2014. So he has averred that he did have access to writing implements, right? Well, he averred that he was given a special condition under this scenario involving, and I think he describes it quite well, where I'm assuming he begged them for this. But he was shackled, he was muzzled, he was taken to an area where he could fill out this habeas. But all that being said, it's not as if he had access to it. He had to get a special condition just to prepare this. But that document, even the judge seems to question whether it even existed. But it looks like Judge Noriega is taking it as if it did. It never got filed. And there was no way, given his housing and restriction, that he could ever follow up to find out if it was filed. So isn't the right way, if we accept your argument, isn't the right way to decide that until he got out and learned that it wasn't filed as he thought it was, he's entitled to equitable tolling from the time he handed it to the officer until he learned that it wasn't filed? Yes. Okay. And now, it's just tricky for the reasons Judge Rendell said, because we're here on 60B6 review reconsideration, right? So I guess the extraordinary circumstance, as you would have it, is that he couldn't possibly be expected to have followed through as to whether it was actually filed while he was under these restrictions. Correct. Yes, that's exactly what we're saying. Would we say there's newly discovered evidence in that now we know from his filing that he didn't learn until November 10th? We learned that from his habeas petition. I don't think that works, because it really isn't newly discovered. I'm thinking out loud here. I appreciate that. And there is newly discovered evidence in the sense that there were depositions and documents supplied after the ruling by Judge Sleet, which Judge Sleet was not privy to. And I want to bring up to the court one very important thing. Mr. West had filed for discovery during his initial habeas. That discovery motion sat on the table and was never ruled upon. Matter of fact, it was only ruled upon after he was bounced out of court with the denial of a timely filing. So he never got... He specifically asked for his housing records in that, didn't he? He asked for housing records, and he wanted to take depositions. But again, he was pro se at the time, and no ruling was ever given, and he was given no order to allow for discovery. So the Katrina Burley, as well as the documents of housing, yes, they could have been known earlier, but he was never allowed to discover them. But because they could have been known earlier, we really can't... We can't enlarge the concept of newly discovered evidence to mean something that, you know, someone didn't get access to, but was clearly available somehow. Well, I think it would expand the concept. I understand that. I just think in a certain setting, as Mr. West was in, to him it was newly discovered because he could not have discovered it any other way. Technically, he couldn't have. So when you are housed in a cell for 24 hours a day for months on end, you have no access to anything. And how could he... So to him, it was newly discovered. Is it new evidence that wasn't available? No. But it is evidence that was new to him. Because Judge Noriega misapprehended the time at which he first learned about the non-filing of the June 2014 petition, would we send it back to her? She abused her discretion by making an erroneous factual finding, actually. And her equitable tolling argument, based on the fact that he wasn't faultless, was probably incorrect. But why shouldn't we... Should we remand this for her to reconsider her ruling in light of the facts that we now know? She also, I point out, she also misapprehended what the deposition testimony pointed towards. She cited the testimony and said it showed that he wasn't routinely provided with pens. And Burleigh said it was her job to keep pens away from him, that he was swallowing them. It seems like she misapprehended a number of facts. Why shouldn't we remand it and tell her, in light of these erroneous facts, please rule again? I agree. I think that's what should... I think that's what my relief requested. So we shouldn't decide this on our own. We should send it back. I think it needs to be sent. I think a hearing needs to be held. I believe it should be remanded and a hearing should be held on the habeas. Well, a hearing held on the habeas or a hearing held on the 60B? Because you're saying we would have to be permitting, we would have to be reversing her 60B determination. And what I'm saying is we send it back to her, to remand for her, to make a new ruling on the 60B in light of the facts as the record shows them to be. Well, yes. Procedurally, yeah. I think you're right there. Procedurally, she'd have to, in light of that evidence. All right. Thank you, Mr. Radishowicz. We'll hear you on remand. Thank you. Ms. Knoll? I may have pleased to court, Your Honors. Maria Knoll representing the appellee. As Your Honors have obviously understood, this is a very convoluted record. In Judge Noriega's decision, while she may not have considered that the appellant had told the court or written to the court in his pro se filing that he did not know that his habeas or his alleged habeas was not filed until after he got out of the PCO status on November 10, 2014, Judge Sleet had considered that issue when he decided the habeas initially. But Judge Sleet didn't know the timing. And he specifically said, gee, if I knew when he was in PCO and he couldn't draft them, I mean, he didn't have enough information. And he almost hints that if he did have the information, he might have been willing to do something. But he didn't really know when he was in PCO. So I don't think that was the key to it all. Well, Your Honor, while that might not have been the absolute key, the one thing that Judge Sleet had stated, and which still remains true, is that the only evidence that we have from the appellant is his say-so that he asked to write a habeas and that he didn't find out that this alleged habeas was destroyed after the fact. What we have is the appellant that says that he both was able to write a habeas and that it was destroyed, and that he's also saying he wasn't able to write a habeas. And we have to deal with whether he was or was not able to write a habeas and whether we should hold the time for that reason. Well, that's why the definitions are so important. Isn't that correct? Yes, Your Honor, that is correct. You're right that he seems to be arguing against himself, or at least in a contradictory way. But I'm not sure that's sufficient reason to say that we need to affirm here. I just want to take you through the factual timeline. Do you agree that he went into PCO on June 9th? It appears from the records that he went into PCO on June 9th. Yes, Your Honor. All right. And then he claims, we don't know if it's true, but he claims that on the 14th he gave John Flieger the filing on June 18th, right? That is what he claims. Yes, Your Honor. All right. And then he assumes when he gives it to Mr. Flieger that it gets filed. But then when he comes out of PCO, apparently he looks at his prisoner account and doesn't see a deduction for the he is saying, Your Honor, and we know that one was not filed. Right. All right. So we know that one was not filed, and there are two possibilities, it seems to me. One possibility is he's not telling the truth when he says that he handed something to John Flieger on the 18th. And the other possibility is that he is telling the truth, and he did hand it to Mr. Flieger, and Mr. Flieger, for whatever reason, didn't see that it was filed. Either it was lost, destroyed, mishandled, or what have you. Those seem to be the only two possibilities. Are there other possibilities? With respect to that particular alleged filing, no. Those are the only two possibilities. All right. So doesn't the district court need to have a hearing and then make a ruling that is true and can take testimony as to whether, you know, you bring in Mr. Flieger, and he testifies, and he says, Yes, he did give it to me, and I passed it up the chain to whomever he was supposed to at the prison, and I don't know what happened after that. And if that's what Mr. Flieger testifies to, then I would assume the district court is going to say that Mr. West was not untimely. If, on the other hand, Mr. Flieger says, I don't know what he's talking about. He never gave me anything. Then the district court makes a credibility determination as to whether Judge Noriega believes Mr. Flieger's testimony or Mr. West's testimony. Well, that sounds logical, Your Honor, and I'm not trying to be difficult. My issue is when you file a motion to reopen, you have a heavy burden, and from the state's perspective, the burden is on the appellant to provide that information, and that information is not provided here. Right. The burden is heavy. It's extraordinary circumstances, but if, in fact, I know you don't know this to be true, but if, in fact, Mr. West gave a filing, the petition to Flieger on the 18th, and it didn't get filed, and he was incommunicado for all intents and purposes until November 10th, which was past the filing deadline, how would that not be an extraordinary circumstance with respect to timeliness? I understand that, and I don't disagree with that, Your Honor, but we also have that he was provided three grievances filed, two in August and one in October of 2014. Right, but that's consistent with him filing the petition in June, but he had no reason to assume, are you arguing, Ms. Knoll, that he was supposed to assume that the petition he gave to Flieger was destroyed or lost? Why would he have to assume that? No, no, I'm not. I'm not arguing that he was supposed to. Let me get back to your issue about the burden. He files, and he files and says, I didn't know. I gave it to Flieger. He takes an affidavit. It's not just his say-so. He takes an affidavit that he filed petition in June, or he attempted to, and what he did, and he has the burden to produce Flieger. You're the Department of Corrections. You could produce Flieger in response to that and say, that never happened. Isn't that something that you would have the he certainly put the issue before him that, listen, I gave it to this guy. These guys did it, and no one has countered that. Your Honor, respectfully, I disagree. An affidavit written by him is still his say-so. My understanding of a heavy burden is more than a defendant saying he did it. Well, he filed an affidavit and gave pretty good details about it. But even so, Ms. Knoll, the district court should have made findings of fact, right? If the district court made a finding of fact that the affidavit was not credible, then we'd be in a different posture, but that's not where we are. The case was just procedurally irregular by virtue of the he's entitled to retire, but he made a ruling, and then it got handed off to Judge Noriega, and it sort of put the case in an odd procedural posture, didn't it? Yes, definitely. That was definitely not the normal course. So if we do think that a hearing is required, I mean, what's the remedy if we disagree with your argument on appeal? Is the remedy just to vacate and remand for hearing about the purported June 18 petition? If you disagree with the appellees, Your Honor, I would believe that it would be remanded to either reopen to expand the record. I'm sorry, I didn't hear the last part of that. To expand the record or for a hearing on the 60B issue, on the issue of the June 14 petition. In the extraordinary circumstances analysis, do we take his mental condition into account at all? I mean, here with the evidence that, you know, if he did have access to pens, he was swallowing them, he was eating mattresses, you'd have to go through the mental health unit. I mean, is there a case law that says someone in this situation, pro se, in this type of confinement with this mental condition, you know, we hold him to a standard of proving that he absolutely couldn't do this. It just, I couldn't find any case law that puts such a heavy burden on someone in this obviously difficult situation. I'll be honest with Your Honor, this particular situation was difficult to find because of his specific issue. And shouldn't that be, and shouldn't this, the nature of this confinement, the nature of his, you know, mental condition, should that be taken into account on remand? On remand, I would think that would be a factor, Your Honor. And it is, under Cox, it is a multi-factor test. Yes. Under Satterfield, yeah. Yes, I, his case is unique. Well, you still have time left, but you're not required to use it. So you're, do you have any other remarks, Ms. Noll, arguments? Your Honor, I mean, it definitely is an interesting case. I can see why Judge Narita decided the way she did, based on the convoluted record. However, the court, in its discretion, can remand. I do not believe this should be reversed to reopen the habeas at this point and to toll, give, to toll his time, because I do not believe the record is sufficient for that. I do thank the court for its time, and I appreciate the court allowing this, the appellee's time. Thank you. Thank you very much, Ms. Noll. Mr. Ranishevitz? Your Honor, with all due respect, I'll forgo my rebuttal time unless you have any questions. Judge Juricka, any questions? No, I do not. Judge Rendell? No, I do not. All right, well, I thank Mr. Ranishevitz and Ms. Noll. Oral argument is held because it can be helpful, and you were both extremely helpful in this argument, and we appreciate it. We'll take the matter under advisement.